# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES GLENN,<br><br>Plaintiff,<br><br>v.<br><br>STEVE JOHNSON, et al.,<br><br>Defendants. | Case No. 3:17-cv-3802 (BRM) (TJB)<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an opposed Motion to Dismiss (ECF No. 43) filed by Defendants Linda Santoro, Amy Emrich, Officer Scank[1], Officer Vallue, Officer Cuopo, Officer Rubino, Officer Houghtin[2], and Timothy Maines, seeking to dismiss Plaintiff Charles Glenn's ("Plaintiff") amended complaint (ECF No. 31) filed pursuant to 42 U.S.C. § 1983.

The amended complaint lists the following defendants: Chelsea Tessin, Carol Milro, Robert Chetrick, Linda Santoro, Cynthia Johnson, Dr. Ihuoma Nwachukwu, Joy Carmillio, Mr. Brown, Steven Johnson, Timothy Maines, Raymond Royce, Flora DeFilippo, Todd Zimmelman, Allison Sacks, Scott Hornberger, Larry Lukin, Amy Emerich, Officer Diaz, Officer Scank, Officer Vallue, Officer Ranzulli, Officer Cuopo, Officer Santos, Officer Ramos, Officer Rubino, Officer Houghtin, Ms. Hunter. (ECF No. 31.)

Plaintiff alleges federal violations under 42 U.S.C. § 1983 and tort claims under New Jersey law. Plaintiff seeks compensatory and punitive damages against all defendants in their individual

---

[1] Although defendants Scank, Vallue, Cuopo, Rubino and Houghtin are listed as moving defendants, the defendants are not seeking to dismiss all of the claims against them in this motion to dismiss.

[2] First names were not provided for these officer defendants.

capacity as well as injunctive relief and declaratory judgment against defendants in their capacity.

(*Id.* at 15.) Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons sets forth

below, Defendants' motion to dismiss (ECF No. 43) is **GRANTED.**

# I. BACKGROUND

## A. Factual Background[3]

This action arises out of events which occurred during Plaintiff's detention at New Jersey

State Prison ("NJSP"). (ECF No. 31.) Plaintiff was transferred to NJSP in approximately March

2016 from a Connecticut State Prison. (*Id.* at 7.) Plaintiff is now detained at a correctional facility

in New Hampshire.

Although Plaintiff's amended complaint is not the model of clarity, the Court will provide

a recitation of the facts in the most chronological manner possible.

Plaintiff submits he fell on his left wrist on an undisclosed date. On or about March 31,

2016, he was seen by Defendant Dr. Nwachukwu, who examined his visible swollen wrist and

advised him an x-ray would be taken. (ECF No. 31 at 1.) On or about the week of April 11, 2016,

Plaintiff asked Nurse Practitioner Joy Camillio why an x-ray had not yet been taken. (*Id.*) That

same week, an x-ray technician told Plaintiff he could look at the x-ray once it was taken. (*Id.*)

Plaintiff "could see that the wrist was definitely broken," but he did not receive further care. (*Id.*)

Plaintiff submitted inquiries to the medical department, complaining about the wrist injury and the

pain and discomfort he was suffering from. (*Id.*) He was informed on or about May 10, 2016, he

---

[3] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

was scheduled to see an orthopedic specialist, however he did not receive a splint or any pain medication. (*Id.*) On or about May 28, 2016, a member of the medical staff informed Plaintiff his wrist was broken and "there was a piece of bone not attached and wasn't healing properly." (*Id.* at 2.) Plaintiff alleges Dr. Nwachukwu and Nurse Practitioner Carmillio did not give him pain medication, ice, compresses or a splint to protect from further injury for forty-days. (*Id.*)

Upon his arrival at NJSP, Plaintiff was in possession of documentation showing he had severe resistant hypertension and required a low-sodium diet. (*Id.*) He provided Dr. Nwachukwu with documentation of his dietary restrictions, that his blood pressure should be checked twice daily, as well as information stating certain medication should be withheld if his pulse goes below sixty beat per minute (bpm). (*Id.*) Dr. Nwachukwu advised him she would not accommodate his dietary request, nor would she check his pulse or blood pressure daily because the "DOC doesn't do that." (*Id.* at 3.) On two unspecified occasions, cardiologists ordered the DOC to prescribe Plaintiff a renal diet. (*Id.*) Dr. Nwachukwu refused to accommodate the dietary recommendations, and Plaintiff suffered side effects of the high sodium diet, such as pain, headaches, shortness of breath, and blurry vision. (*Id.*)

After Plaintiff was transferred to NJSP, he was denied admittance to therapeutic groups or treatment by female employees. (*Id.* at 7.) Plaintiff submits he was denied treatment for his post-traumatic stress disorder, despite psyche evaluations documenting he lived with such disorders. (*Id.*) When Defendants Dr. Luken, Mrs. Sacks, Dr. DeFilippo and Ms. Brown would speak to him, it was for 30-90 seconds through a cell door within other inmates' earshot. (*Id.*) Plaintiff unsuccessfully wrote to Dr. DeFilippo for months regarding what he perceived were privacy violations. (*Id.* at 8.) Plaintiff submits these defendants spread information throughout NJSP that he "coerced female employees and that [Plaintiff is a] manipulator, who compromises female

3

employees." (*Id.* at 7.) Plaintiff appears to be arguing this information was disseminated about him because he was sexually exploited by female employees while he was housed in a Connecticut state prison. (*Id.*)

In December 2016, Plaintiff was notified by Dr. Nwachukwu and Nurse Practitioner Carmillio that he would be transported to an off-site facility for medical care. (*Id.* at 5.) He immediately wrote to Dr. DeFilippo requesting "handicap bus transportation" due to his documented claustrophobia. (*Id.*) On January 10, 2017, Dr. DeFilippo denied his special transportation request despite other clinicians verifying Plaintiff's claustrophobia to Dr. DeFilippo. (*Id.*) Dr. DeFilippo advised Plaintiff twice in January 2017 that she would write to the administration to convey his transportation accommodation request. (*Id.* at 6.) However, Administrators Chelsea Tessin and Raymond Royce "stated Dr. DeFilippo failed to order the special transport." (*Id.*) Plaintiff was transported to St. Francis Hospital twice in February 2017 in "a small spaced vehicle" causing him to suffer, *inter alia*, "psychological terror, a panic attack, shortness of breath, chest tightness and a spike in blood pressure." (*Id.*)

On or about January 12, 2017, Plaintiff arrived at the infirmary for medical evaluation and was advised he would be going to "1-C." (ECF No. 31 at 8.) Plaintiff expressed his opposition to going to 1-C as it is "an overflow unit routinely used to watch mental health inmates on suicide watch or punitive drug and contraband watches." (*Id.*) Plaintiff insisted, there were open infirmary cells and he should not be punished. (*Id.*) He eventually signed a refusal form and returned to his housing unit. (*Id.*) An hour thereafter, he was ordered to return to the infirmary and was advised he could not refuse. (*Id.*) Sgt. Crawford, who escorted Plaintiff, stated he was sent "to figure out what was going on." (*Id.*) Plaintiff returned to 1-C and he stated he "was being retaliated against and I have the right to refuse treatment." (*Id.*) Sgt. Crawford acquiesced to Plaintiff's demand and

took him to the infirmary. (*Id.* at 9.) Once Plaintiff arrived at the infirmary, his television was taken from the cell, although other inmates in his classification were allowed one. (*Id.*) Plaintiff heard Nurse Milroy and Officer Cannon say that Plaintiff "get[s] nothing!!" (*Id.*) Nurse Milroy gave Plaintiff 0.2 Clonidine to lower his blood pressure. (*Id.*) Approximately an hour and a half later, Nurse Milroy returned to Plaintiff's cell and took a reading of his blood pressure, which was 190 over 120. (*Id.*) Plaintiff submits the reading had risen since he ingested the medication. (*Id.*) Nurse Milroy did not return to observe Plaintiff's blood pressure for the rest of the night nor did she send any other medical professionals. (*Id.*) At approximately 9 p.m., Nurse Milroy gave Plaintiff his medication, however he kept asking to speak to the nurse because he was "having cardiac symptoms and was in fear of a stroke or heart attack." (*Id.*) He was held in the infirmary on two prior occasions and Nurse Milroy did not adequately respond despite his blood pressure being "critically high" and having "cardiac symptoms." (*Id.* at 10.) He posits this was retaliatory treatment because she was aware he filed a lawsuit alleging he was sexually exploited before he was transferred to New Jersey. (*Id.*) He also submits he filed a grievance to Administration and medical staff, namely Administrator Johnson and Nurse Susan Springler after the second time[4] to no avail. (*Id.*)

From April 4, 2017, until July 3, 2017, and from November 10, 2017, until April 21, 2018, Plaintiff was housed in the NJSP "Ad-Seg" unit on 7-wing. (*Id.* at 4.) Plaintiff submits the unit was infested with cockroaches, mice, and rats. (*Id.*) He found a rat crawling over his body and fecal remains on his cell floor. (*Id.*) He was provided cleaning supplies once a week. (*Id.*) Plaintiff submits he asked Officers Vallue, Ranzulli, Cuopo, Rodriguez and Spencer to call unit cleaner to clean the common areas, however they rebuffed his requests. (*Id.* at 4-5.) He also submits he wrote

---

[4] Plaintiff does not provide a date for when the two prior occasions with Nurse Milroy occurred.

to Administration, however they failed to take any action and he continued to live in these conditions for months. (*Id.* at 5.) He also submits, "the Administrator would do unit rounds, see the conditions, and do nothing." (*Id.*)

Plaintiff also submits from approximately April 25, 2017, and July 2, 2017, he was sexually harassed and strip-searched in the presence of inmates and civilians. (*Id.* at 10.) He submits, Corrections Officer Vallue directed officers Cuopo, Diaz, Ramos, Santos, Scank and Ranzulli to strip him at the front of the unit in others line of sight. (*Id.* at 11.) Plaintiff also overheard Corrections Officers Vallue, Cuopo, and Ranzulli discuss ways to sabotage the Ad-Seg programs by not allowing inmates out of their cells and publicly strip search them and searching cells if inmates leave. (*Id.*) Officer Vallue screamed over the unit, "If you choose to go, it's going to be nuts and butts at the front of the unit!!" (*Id.*) In June, after Plaintiff complained numerous times to Mrs. Ryan and Mrs. Santiago of Social Services, he was stripped naked in the presence of Mrs. Santiago (*Id.*) Mrs. Santiago filed a complaint about the officer's conduct. (*Id.*) Plaintiff submits he was harassed and verbally abused by Officer Vallue. (*Id.*) Plaintiff was transferred to 3-tier and after lodging a complaint, an officer directed an "inmate worker" to throw urine and feces at him through bars while Plaintiff was in his cell. (*Id.*)  On June 23, 2017, or June 26, 2017, an inmate said to Plaintiff, "You wrote up the officer for strip-searching you—you bitch." (*Id.*) Plaintiff was assaulted by being punched through bars, spat on him, and threw urine and feces at him. (*Id.*) Minutes later, the inmate worker continued to "harass" and "abuse" Plaintiff. He alleges the officers failed to act and failed to protect. (*Id.* at 12.) On December 5, 2017, Plaintiff was strip-searched by Officer Ramos and other unknown officers and other inmates and civilian staff members on 7-wing, 4-tier. (*Id.*)

6

Between April 4, 2017, and April 10, 2017, Plaintiff was held on 7-wing, 2-tier on pre-hearing detention for two disciplinary charges. (*Id.*) On April 10, 2017, the charge was dismissed at Plaintiff's disciplinary hearing because there was no evidence to substantiate the charge. (*Id.*) Four days later on April 14, 2017, Plaintiff was given paperwork signed by Disciplinary Hearing Officer, Ms. Hunter, stating he and four other inmates were taken to a hearing on April 11, 2017, and were found guilty of a .754 charge. (*Id.* at 13.) Plaintiff wrote to the Administration and asked the Security Investigation Division to lodge an investigation into the falsification of documents, which resulted in him remaining in Ad-Seg. for ninety days rather than in general population. Plaintiff was exposed to extremely unhygienic conditions in Ad-Seg., which had a rodent infestation, trash, lack of air conditioning in the summer months as well as limited opportunities for socialization, telephone privileges, recreation, and showering. (*Id.*)

## B. Procedural Background

Plaintiff filed his initial complaint in this Court on May 23, 2017. (ECF No. 1.) On June 5, 2017, the Court filed an opinion and order denying Plaintiff's motion for leave to proceed *in forma pauperis* and administratively terminated the matter. (ECF No. 2-3.) On February 6, 2018, the Court issued an order granting Plaintiff's second motion for leave to proceed *in forma pauperis*. (ECF No. 6.) On February 2, 2019, the Court filed an opinion and order allowing Plaintiff's claims to proceed in part and denying Plaintiff's motion to amend without prejudice. (ECF No. 9.) Plaintiff's following claims were allowed to proceed: denial of medical care against Defendants Nwachukwu and Caramillo for the delayed care for his injured wrist in spring of 2016; denial of medical care against Dr. Nwachukwu for his failure to comply with Plaintiff's treatment plan for his hypertension; denial of medical care against Defendant Defilipo regarding the treatment of Plaintiff's claustrophobia resulting from the van transport; denial of medical care against

Defendants Luken, Sacks. Defilipo and Brown for refusing to permit Plaintiff to attend therapeutic groups or receive treatment for his post-traumatic stress disorder; denial of medical care against Defendant Milroy for the incidents in January 2017; improper strip search claim against Defendant Vallue; and retaliation claims against Defendants Vallue, Ramos, Santos and Glover. (*Id.* at 19.)

On February 4, 2019, Plaintiff filed a motion for preliminary injunction and temporary restraining order (ECF No. 12), followed by another motion for preliminary injunction and temporary restraining order filed on February 11, 2019, (ECF No. 15). The Court subsequently ordered defendants, care of the New Jersey Attorney General's Office, to show cause why Plaintiff's injunctive relief request for improved treatment of his high blood pressure and related conditions, should not be entered. (ECF No. 13.) The Attorney General's Office filed a response indicating that it could not accept service or respond on behalf of any defendant because it did not represent any parties in this case. (ECF No. 18.) On February 21, 2019, Plaintiff filed a motion to amend the complaint (ECF No. 22), which the Court granted on September 30, 2019 (ECF No. 26.) The Court also administratively terminated Plaintiff's motions for injunctive relief. (*Id.*) Plaintiff filed an amended complaint on September 30, 2019. (ECF No. 31.)

On January 9, 2020, United States Magistrate Judge Tonianne J. Bongiovanni denied Plaintiff's motion to appoint pro bono counsel without prejudice. (ECF No. 40). Defendants Cuopo, Amy Emerich, Houghtin, Timothy Maines, Rubino Linda Santoro, Scank and Vallue filed the instant motion to dismiss on February 21, 2020. (ECF No. 43.) Plaintiff filed a letter motion to appoint pro bono counsel and for mediation settlement on June 15, 2020. (ECF No. 46.) (ECF No. 43.) (*Id.*) On August 12, 2020, Plaintiff filed objections to the motion to dismiss. (ECF No. 47.)

Plaintiff's amended complaint alleges federal violations under 42 U.S.C. § 1983 as well as violations of New Jersey state law. (ECF No. 31.)

Defendants now move to dismiss for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6) (ECF No. 43).

## II. LEGAL STANDARD

### A. Motion to Dismiss

In deciding a motion to dismiss, a district court is "required to accept as true all factual

allegations in the complaint and draw all inferences in the facts alleged in the light most favorable

to the [plaintiff]." *Phillips v. Cty. of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint

attacked by a . . . motion to dismiss does not need detailed factual allegations. *Bell Atlantic v.*

*Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds'

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286

(1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those

"[f]actual allegations must be enough to raise a right to relief above the speculation level."

*Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570). "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more

than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a "probability

requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not

required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]-'that the pleader is entitled to relief.'" *Id.* at 679. (quoting Fed. R. Civ. P. 8(a)(2)).  Moreover, the Court will employ its screening authority under the Prison Litigation Reform Act ("PLRA"). "[I]f there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA." *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 589 (W.D. Pa. 2008).

### B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III. DECISION

Plaintiff lists a litany of constitutional violations for which he seeks redress. Plaintiff alleges, *inter alia*, retaliation, use of excessive force, failure to protect, wrongful conditions of confinement and deliberate indifference. (ECF No. 31.) As a preliminary matter, the Court dismisses all claims for injunctive relief against all the defendants in their official capacity. Since the matter was filed, Plaintiff was transferred to a correctional facility outside of New Jersey, consequently rendering any request for injunctive relief against defendants moot. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003).

### A. Plaintiff's Count Three[5]

In count three of his amended complaint, Plaintiff claims Administrator Steven Johnson, Linda Santoro, Cynthia Johnson, and Timothy Maines[6] violated his Eighth and Fourteenth Amendment rights by subjecting him to cruel and unusual conditions of confinement. (ECF No. 31 at 4-5.)

From April 4, 2017, until July 3, 2017, and from November 10, 2017, until April 21, 2018, Plaintiff was housed in the NJSP "Ad-Seg" unit on 7-wing. (*Id.* at 4.) Plaintiff submits the unit was infested with cockroaches, mice, and rats. (*Id.*) He found a rat crawling over his body and fecal remains on his cell floor and he was provided cleaning supplies once a week. (*Id.*) Plaintiff submits he asked Officers Vallue, Ranzulli, Cuopo, Rodriguez and Spencer to have the unit cleaned, however they rebuffed his requests. (*Id.* at 4-5.) He further submits he wrote to Administration, however they failed to take any action and he continued to live in these conditions

---

[5] Plaintiff's Counts one, two, four, five and six do not include claims against the moving defendants. (ECF No. 31).

[6] Plaintiff refers to Defendant Maines and Emrich as "N.J.S.P. Staff." (ECF No. 31 at 14.)

for months. (*Id.* at 5.) He also submits, "the Administrator would do unit rounds, see the conditions, and do nothing." (*Id.*)

Moving defendants submit, Plaintiff's claim is almost identical to his previously claim which was dismissed in the Court's prior screening opinion and order. (ECF 43 at 11-12.) Plaintiff's amended complaint, solely adds the "the Administrator would do unit rounds, see the conditions, and do nothing." (ECF No. 31 at 5.)

Although Plaintiff does not identify who the "Administrator" is, he identifies Defendant Steven Johnson as "Administrator Steven Johnson" in another section of the claim. (*Id.* at 3.) Assuming *arguendo*, he is referring to Steven Johnson, Plaintiff does not provide sufficient facts about when in relation to the purported violation, the administrator conducted unit rounds. Moreover, Plaintiff does not state any facts about moving defendants Santoro, Cynthia Johnson, and Maines' involvement.

The Court finds Plaintiff has not asserted any factual allegations that would support that each Administrator and Supervisor defendant had personal involvement in the alleged harm nor that they had knowledge of the of the condition in the Ad-Seg housing unit during the relevant time period. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) ("[D]efendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.") This Court requires that allegations of actual knowledge and acquiescence be pleaded with "appropriate particularity." *Id.*; *see also Boykins v. Ambridge Area School Dist.*, 621 F.2d 75, 80 (3d Cir. 1980). Nor has Plaintiff alleged any facts to support moving defendants "established and maintained a policy, practice or custom" which directly caused the conditions of confinement.

Consequently, to the extent moving defendants, Santoro, and Maines, seek to dismiss Count three of the amended complaint, the motion is **GRANTED**.

### B. Plaintiff's Count Seven

Plaintiff alleges Corrections Officers, Vallue, Rubino, Houghtin, Ranzulli, Cuopo, Scank, Ramos, Diaz, and Santos violated his Fourth Amendment right to privacy, used excessive force, and violated his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and retaliation, by subjecting him to a strip-search in the presence of inmates and civilians. (ECF No. 31 at 10-11.) He also submits Defendants Steve Johnson, Amy Emrich, and Chelsea Tessein violated his rights "[b]y way of supervisory capacity." (*Id.* at 10.) Plaintiff alleges this conduct constitutes assault and failure to protect. Plaintiff provides, *inter alia*, "[t]he policy is that inmates are to be stripped-searched where there is vanity and modesty. I am a Muslim and modesty and vanity are a part of my religion." (*Id.* at 12.)

Emrich argues Plaintiff has not pled any facts demonstrating she was aware of this conduct and is "solely attempting to attach liability to Defendant Emrich through an impermissible theory of respondeat superior." (ECF No. 43-1 at 20.) While Emrich's counsel represents other moving defendants accused of wrongdoing in this particular claim, the motion to dismiss only seeks to dismiss the claim against Emrich. (*Id.* at 20-21.)

To the extent Plaintiff is making a supervisory liability claim against Emrich, the court agrees that Plaintiff has not pled any facts suggesting Emrich was aware of any the alleged conduct involving strip-searches or retaliatory conduct. Even if the Court were to construe Plaintiff's argument that the facility had a policy that permitted strip searching when it would violate a tenet of his religion, Plaintiff has not pled sufficient facts to support that was the cause of the purported conduct. "[T]o establish a claim against a policy maker under § 1983 a plaintiff must allege and

13

prove that the official established or enforced policies and practices directly causing the constitutional violation." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Here, however, Plaintiff's factual allegations consist primarily of a conversation amongst the correction officers about devising a strategy to deter inmates from wanting to leave their cells. Plaintiff's own factual recitation does not suggest that Defendant Emrich's alleged policy was the direct cause of the purported wrongdoing. Therefore, moving defendant Emrich's motion to dismiss the allegations against her in count seven of the amended complaint is **GRANTED**.

### C. Plaintiff's Count Eight

Plaintiff alleges Defendants Officer Russell, Steve Johnson, Amy Emrich, Commissioner Lanigan and SID staff John Doe violated his Fourteenth Amendment right to due process as well as the Eighth Amendment's prohibition on cruel and unusual punishment by falsifying documents to support a disciplinary charge that resulted in him being housed in administrative segregation for ninety days. (ECF No. 31 at 12-14.) Plaintiff submits he "immediately wrote to Administration and asked the Security Investigation Division to lodge an investigation into the falsification of documents by a Staff member and take action to send me back to population." (*Id.* at 13.) Plaintiff alleges the conditions in "7 wing" of administrative segregation were atypical as there was a vermin infestation, limited cleaning, poor plumbing, and no room to move around or exercise and no air conditioning in the summer months. (*Id.* at 13-14.)

The moving defendants argue Plaintiff should not be able to re-instate this claim because he has still not adequately pled how his temporary transfer to administrative segregation implicates a protected liberty interest. (ECF No. 43-1 at 14-15.) The Court previously dismissed this claim for this very reason. (ECF No. 9 at 18-19.) Additionally, moving defendant Emrich argues, Plaintiff has not alleged any facts supporting she had personal knowledge of the alleged due

process violations or the alleged conditions in the housing unit where Plaintiff was then housed. (ECF No. 43-1 at 20.) Finally, defendants argue Plaintiff "fails to plead any factual allegations that Defendants were aware of the issues and deliberately indifferent." (*Id.* at 16.)

Plaintiff pleads he sent a letter to "Administration" generally. He does not plead Emrich was aware of the alleged conduct towards Plaintiff nor that she was even one of the recipients of his letter. Plaintiff once again fails to allege any personal involvement. *See Rode*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Court agrees that Plaintiff has not adequately pled Emrich's involvement in the allegations in count eight and will therefore grant, moving defendant Emrich's motion to dismiss the allegations against her in Count eight of the amended complaint. The Court also agrees that Plaintiff has not adequately pled whether the remaining supervisory defendants, "Steve Johnson and Commissioner Lanigan," had knowledge of the alleged conditions. Consequently, the claims in count eight against Johnson and Lanigan are also dismissed.

Furthermore, Plaintiff names "Officer Russell and SID staff John Doe"[7] as defendants in this claim. Officer Russell and SID staff John Doe are not named in the case caption, but pursuant to the Court's screening powers under 28 U.S.C. § 1915(e)(2)(B), the Court will dismiss the claim against Officer Russell and SID staff John Doe, because of Plaintiff's failure to plead personal involvement. The only time Officer Russell and SID staff John Doe are named is in the preamble to count eight and no additional facts are provided other than that the alleged conduct was "done" by these two individuals and the supervisory defendants. It is unclear whether Officer Russell and John Doe were privy to the conditions or what role they played at all. The claims in count eight

---

[7] Plaintiff does not list Officer Russell or SID staff John Doe as defendants in the section of his amended complaint where he names all of the defendants in this matter. (ECF No. 31 at 14.)

against Officer Russell and SID staff John Doe are **DISMISSED** because of Plaintiff's failure to adequately plead Russell's personal involvement.

Moving defendants' motion is **GRANTED** to the extent it seeks to dismiss count eight against defendants Emrich, Steven Johnson, and Gary Lanigan. The Court also **DISMISSES** count eight against defendants Officer Russell and SID staff John Doe pursuant to its screening powers. Therefore, count eight is **DISMISSED** in its entirety.

### D. Plaintiff's State Law Claims

#### 1. Defamation

Although Plaintiff does not raise a defamation claim against the moving defendants, they nonetheless argue Plaintiff's defamation claim continues to be barred by the one-year statute of limitations as discussed in the Court's screening opinion. (ECF No. 43-1 at 14.)

In its prior opinion, the Court found Plaintiff's defamation claim was barred by the one-year statute of limitation, as he alleged conduct which purportedly occurred in March 2016 and his complaint was not filed in this Court until May 2017. (ECF No. 9 at 16.) Plaintiff continues to allege the same conduct by Nurse Milroy during the same time period. (ECF No. 31 at 7-8.) Consequently, the moving defendant's motion is **GRANTED** and Plaintiff's defamation claim is **DISMISSED**.

#### 2. Assault

Plaintiff also alleges in Count Seven of the Amended Complaint that defendants' actions constituted assault. (ECF No. 31 at 10.) Moving defendants argue, to the extent Plaintiff is raising a new state-law assault claim, he is barred from doing so pursuant to New Jersey Tort Claims Act ("NJTCA"). (ECF No. 43-1 at 21-23.)

16

The Court construes Plaintiff's amended complaint as raising a common law assault claim. "Notice under the NJTCA is not required for either NJCRA claims or § 1983 claims, but is required for common law tort claims." *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 746 (D.N.J. 2016). Accordingly, moving defendants' motion will be granted and the assault claim against all defendants is **DISMISSED**. *See Van Valen v. Lanigan*, Civ. Action No. 18-11441, 2020 WL 859330 at *5 (D.N.J. Feb. 21, 2020) (citation omitted) ("failure to file a notice of claim is a ground for dismissal at the motion to dismiss stage")

### E.  Motion to Appoint Pro Bono Counsel

Plaintiff has also filed a Motion to Appoint Pro Bono Counsel that is denied for the following reasons. (ECF No. 46.) Factors when considering such a motion include whether the plaintiff's claim has some merit in fact and law, plaintiff's ability to present his or her own case and the Plaintiff's literacy, education litigation experience and prior work experience. *See Tabron v. Grace*, 6 F.3d 147, 155-156 (3d Cir. 1993). *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citation omitted).

Plaintiff has raised his transfer to a prison in New Hampshire as well as his complaint having survived a motion to dismiss. (*Id.* at 3.) The Court construes Plaintiff to be referring to the screening opinion as this is the first motion to dismiss in the history of this litigation. Nonetheless, Plaintiff has been able to present his claims thus far, including a motion to amend, which was decided in his favor. Plaintiff has not adequately demonstrated that appointing counsel is appropriate at this juncture. The Court recognizes Plaintiff is no longer in this jurisdiction, however, because Plaintiff's location has not posed any issues, logistical or otherwise, the Court need not address that concern. Therefore, Plaintiff's Motion to Appoint Pro Bono Counsel is **DENIED**.

**V. Conclusion**

For the foregoing reasons, the moving Defendants' motion to dismiss the Amended Complaint (ECF No. 43) is **GRANTED** as set forth herein and in the accompanying order. Plaintiff's claims against all defendants in their official capacities are **DISMISSED WITH PREJUDICE**. Plaintiff's claims against moving defendants Emrich, Santoro and Maines are dismissed in their entirety without prejudice.

Plaintiff's defamation claim against Nurse Milroy is dismissed with prejudice.

Plaintiff's assault claim against defendants Vallue, Rubino, Houghtin, Ranzulli, Cuopo, Scank, Ramos, Diaz, Santos, Steven Johnson, Amy Emerich and Chelsea Tessein are dismissed with prejudice.

Count eight of the Amended Complaint is dismissed in its entirety.

An appropriate order follows.

Dated: September 30, 2020

/s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**